JAMÉS V. EZEKIEL, JR. *vs.* JONES MOTOR CO. INC. & another.

Norfolk. October 5, 1977. — February 15, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Libel and Slander,* Privilege, Malice.

In an action against a corporation and its employee for damages caused by an unsworn and allegedly false and slanderous statement about the plaintiff, a fellow employee, made by the defendant employee as a witness at a hearing conducted by a joint management-union grievance board upon appeal by the plaintiff from his discharge by the corporation, it was error for the trial judge to enter judgments for the defendant, notwithstanding the verdict, on the specific ground that the statements were made in circumstances of an absolute and unqualified privilege [385-386]; there was no merit in contentions by the defendants that the absolute privilege should apply because the grievance procedure was quasi-judicial in nature [386-387]; that Federal labor policy would be frustrated by allowing actions in State courts for slander during labor grievance proceedings [387-389]; and that the plaintiff by requesting the board hearing consented to the publication of the defamation [389].

In an action against a corporation and its employee for slandering the plaintiff, a fellow employee, made by the defendant employee as a witness at a hearing conducted by a joint management-union board upon appeal by the plaintiff from his discharge by the corporation, a valid basis for the trial judge's entry of judgments for the defendants, notwithstanding the verdict, was not established on the grounds that there was insufficient evidence of actual malice on the part of the defendants, or that they did not abuse the qualified or conditional privilege attaching to communications made in the course of grievance proceedings, where there was evidence that the individual defendant at the hearing knowingly lied or knowingly accused the plaintiff of theft for the improper purpose of securing his discharge [390-391]; evidence that two managers of the corporate defendant had authority to fire the plaintiff warranted a conclusion that they acted within the scope of their employment when they told him their grounds for wanting to discharge him [391]; and the managers' statements to the plaintiff were properly admitted and were sufficient evidence of malice to destroy the defendants' qualified privilege [391-392].

In an action for an alleged slanderous statement made by a witness before a joint management-union board at a hearing to determine grounds for the discharge of the plaintiff, the trial judge in his charge properly allowed the jury to determine whether the statement imputed a crime. [392]

Where the judge in an action for slander adequately charged the jury on the issue of malice and the method of publication was not at issue, a charge with respect to the burden of proving unnecessary, unreasonable, or excessive publication was not required. [393]

CIVIL ACTION commenced in the Superior Court on October 4, 1974.

The case was tried before *Brogna, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Gerard F. Lane* for the plaintiff.

*Charles W. O'Brien (Philander S. Ratzkoff* with him) for the defendants.

LIACOS, J. The plaintiff commenced an action against both defendants in the Superior Court seeking recovery for damages caused by an allegedly slanderous statement made by the defendant Dennis Lauber, an employee of the defendant Jones Motor Co. Inc. (Jones).[1] The statements in issue were made by Lauber during his appearance before a joint management-union grievance board. The jury returned verdicts for the plaintiff against each defendant in the amount of $43,120.[2] Thereafter, the trial judge, on mo-

---

[1] The plaintiff waived counts 2 and 4 of his declaration; the case was submitted to the jury on count 1 (against Jones) and count 3 (against Lauber). We note that the record appendix fails to set forth count 1 in its entirety. An examination of the original papers, therefore, was required due to the lack of care taken to ensure that this court receive an adequate record on appeal.

[2] The verdicts originally returned by the jury were for the plaintiff against the defendant Jones in the amount of $3,120 and against the defendant Lauber in the amount of $40,000. Because the verdicts were inconsistent, the judge refused to record them. He further charged the jury and sent them back for renewed deliberations. The jury then returned with the verdicts as set forth in the text. No claim of error was raised on appeal by either the plaintiff or the defendants as to this procedure.

tion of the defendants, entered judgments for the defendants notwithstanding the verdict on the specific ground that the alleged slanderous statements were made in circumstances of an absolute and unqualified privilege.[3] The parties appealed to the Appeals Court and we transferred the case here sua sponte.

The plaintiff's appeal challenges the judge's granting of the motion for judgment notwithstanding the verdict. The defendants' cross appeal seeks a review of portions of the judge's charge to the jury and certain evidentiary rulings. For the reasons stated, we reverse.

There was evidence of the following facts. The plaintiff was employed by Jones as a freight-handler and truck driver at its Braintree terminal from about 1966 to December 29, 1969. During the two-year period prior to December, 1969, the plaintiff missed several months of work due to injuries sustained in industrial accidents. The plaintiff testified that shortly after he returned to work in September, 1969, Jones's terminal manager, Howard Neill, and its regional manager, Robert Drake, said, in substance, that Jones was now a self-insurer and was going to get rid of people like the plaintiff who were costing the company too much money.

On December 29, 1969, shortly after 3 A.M. the Braintree police stopped the plaintiff for speeding as he was driving his car from the Jones terminal. The police discovered in the plaintiff's car a fishing rod and reel, which came from a shipment handled by Jones. The plaintiff denied taking the items and said that he had no idea who placed them in his car. Jones discharged the plaintiff on December 31 as a result of the incident.

The collective bargaining agreement between Jones and the union of which the plaintiff was a member provides a procedure for the adjustment of employee grievances. An employee may appeal his discharge or suspension to the New England Joint Area Committee, a six-member man-

---

[3] In his charge to the jury, the judge had instructed them that the defendants could avail themselves only of a conditional or qualified privilege.

agement-union grievance board. When the board, by a majority vote, settles a dispute, such decision is final and binding on both parties.

The plaintiff appealed his discharge to this board. On December 16, 1970, at a hearing held by the grievance board to review the plaintiff's case, the defendant Lauber, an employee of Jones, made an unsworn statement which was allegedly slanderous. According to the plaintiff, Lauber stated that "he was out in the yard checking trucks and watching the building as per his orders and he saw James Ezekiel [the plaintiff] steal a rod and reel from Jones Motors and place it in his car." The claim of the plaintiff is, of course, that this statement was not only slanderous but false.

1. *Absolute Privilege.*

The question presented on the plaintiff's appeal is whether a defamatory statement made by a witness at a hearing conducted by a joint management-union grievance board is absolutely privileged.

An absolute or unqualified privilege provides a complete defense to slander and libel suits, immunizing the defendant from all liability even if the defamatory statement is uttered maliciously or in bad faith. *Aborn* v. *Lipson*, 357 Mass. 71, 73 (1970). With a qualified or conditional privilege, a defendant is protected unless he abuses the privilege. See *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. 515, 520-522 (1961); *Galvin* v. *New York, N.H. & H.R.R.*, 341 Mass. 293, 297 (1960).

Generally, the recognition of an absolute privilege in defamation cases is limited to cases in which public policy or the administration of justice requires complete immunity from the threat of defamation suits. As we noted in *Vigoda* v. *Barton*, 348 Mass. 478, 484 (1965), this court has traditionally restricted the absolute privilege to comparatively few cases. See *Sheppard* v. *Bryant*, 191 Mass. 591 (1906) (legislative committee); *Laing* v. *Mitten*, 185 Mass. 233 (1904) (judicial proceeding). We have extended the qualified privilege to a greater variety of situations. See, e.g.,

*Hutchinson* v. *New England Tel. & Tel. Co.*, 350 Mass. 188 (1966) (communication to police in course of investigation of crime); *Retailers Commercial Agency, Inc., petitioner, supra* (reports made by mercantile agency to interested subscriber); *Sheehan* v. *Tobin*, 326 Mass. 185 (1950) (report of board meeting of labor union); *Christopher* v. *Akin*, 214 Mass. 332 (1913) (defendant's statement made in good faith in his immediate interest and for purpose of protecting that interest).

We hold that in this situation, where the defendants had a duty to communicate to the grievance board the reasons for terminating the plaintiff's employment, they enjoyed a qualified privilege in revealing the grounds for such termination. This is in accordance with the commonly held view that the privilege attaching to communications made in the course of grievance or arbitration proceedings under collective bargaining agreements is a conditional one. *Polk* v. *Missouri Pac. R.R.*, 156 Ark. 84 (1922). *Henthorn* v. *Western Md. R.R.*, 226 Md. 499 (1961). *Jorgensen* v. *Pennsylvania R.R.*, 25 N.J. 541 (1958). *Bird* v. *Meadow Gold Prods. Corp.*, 60 Misc. 2d 212 (N.Y. Sup. Ct. 1969). *True* v. *Southern Ry.*, 159 S.C. 454 (1930). See Annot., 60 A.L.R.3d 1041, 1052 (1974).

The defendants contend, however, that the grievance proceedings are actually quasi-judicial in nature, and thus the absolute privilege should apply. The defendants enumerate several judicial-like procedures which were employed here: each party had an opportunity to present evidence to the committee, the plaintiff was present and represented by the union business agent, and the board's decision was final and binding. According to the defendants, if the grievance adjustment proceedings are to serve fully their intended function of private resolution of labor grievances, witnesses must be free to speak without fear of incurring civil liability. They support their argument with reliance on *Neece* v. *Kantu*, 84 N.M. 700 (1973). In that case the Court of Appeals of New Mexico held that the quasi-judicial nature of a grievance proceeding arising under a collective

bargaining agreement made the absolute privilege applicable. *Id.* at 706.

We are not persuaded by the court's rationale in *Neece.* While a witness at a judicial proceeding is free to make defamatory statements without fear of being sued by the defamed person, the witness is nevertheless subject to the control of the judge. If he or she gives false testimony, prosecution for perjury or punishment for contempt may be forthcoming. See 1 F. Harper & F. James, Torts § 5.22 (1956). Such protections against false testimony simply do not exist at a labor grievance hearing such as the one which took place here. A witness at a grievance hearing need not give sworn testimony, nor is he subject to the control of a judge to limit his testimony to competent relevant and material evidence. A conditional privilege provides sufficient incentive for the witness to speak openly, but does not remove the safeguards against communications which are deliberately false.

Relying on *General Motors Corp.* v. *Mendicki,* 367 F.2d 66 (10th Cir. 1966), the defendants suggest another rationale for recognizing an absolute privilege for witnesses at a management-union grievance hearing — national labor policy. In *General Motors Corp.* v. *Mendicki,* the Tenth Circuit Court of Appeals held that statements made at a grievance proceeding must be unqualifiedly privileged so as to prevent impairment of the national labor policy. The court described this labor policy as one which. encouraged, facilitated, and effectuated the settlement of issues between the employers and employees through the processes of conference and collective bargaining in order to promote industrial peace. According to the court in *Mendicki,* the threat of defamation actions would inhibit frank discussion by the representatives of employer and employee at such conferences and create irritations between employer and employee, thereby frustrating the congressional intent, expressed in the National Labor Relations Act (29 U.S.C. § 151 et seq. [1970]) to encourage peaceful settlement of labor disputes. *Mendicki, supra* at 70-71.

We prefer the approach taken in *Bird* v. *Meadow Gold Prods. Corp.*, *supra,* where the New York court rejected the *Mendicki* rationale and held that allegedly defamatory statements were qualifiedly privileged when made at a conference pursuant to a collective bargaining agreement. The court found no congressional legislation specifically governing defamatory actions predicated on statements made during a labor grievance proceeding nor prohibiting a State court from regulating conduct in a manner consistent with national labor policies. *Id.* at 215.

The recent Supreme Court decision in *Farmer* v. *United Bhd. of Carpenters & Joiners Local 25,* 430 U.S. 290 (1977), yields relevant principles giving support to the view taken by *Bird.* In *Farmer* it was held that the National Labor Relations Act did not preempt a State cause of action to recover damages for the intentional infliction of emotional distress which arose in the context of a labor dispute. But cf. *Commonwealth* v. *Noffke,* 5 Mass. App. Ct. 496, application for further appellate review granted, 373 Mass. 864 (1977) (National Labor Relations Act preempts prosecution of labor union organizers for peaceful trespass while disseminating information to employees on the employer's private property). The Court in *Farmer* determined that the potential for interference with the Federal scheme of labor regulation was insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens from such tortious conduct. *Farmer, supra* at 304. The States are free to regulate activities which are "a merely peripheral concern of the Labor Management Relations Act" or touch "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction . . . [an inference cannot be drawn] that Congress had deprived the States of the power to act." *Id.* at 296-297, quoting from *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236, 243-244 (1959). See also *Linn* v. *Plant Guard Workers,* 383 U.S. 53 (1966) (State cause of action for malicious libel arising from union organizational campaign not preempted by Federal labor statutes).

While the defendants do not clearly argue that this slander action in the State court is preempted by Federal labor legislation, they do urge that they should be immune from liability to avoid frustrating the policies expressed in this Federal labor legislation. Protecting its residents from slander has long been a concern of the Commonwealth. A grant of the conditional privilege provides a sufficient safeguard against the dampening of free discussion of the pertinent facts important to the peaceful adjustment of grievances. Cf. *Linn* v. *Plant Guard Workers, supra* at 64-65.

Finally, the defendants assert a third possible theory to support the extension of an absolute privilege to grievance hearings by claiming that the plaintiff, in requesting the hearing with the knowledge that the proceedings would focus on the circumstances involving his discharge, thereby consented to the publication of the defamation. According to the defendants, if a successful defamation suit is allowed in these circumstances, the grievance hearing will become merely a pretext for bringing civil actions for damages.

We are reluctant to view the plaintiff's voluntary compliance with his union's required grievance procedures as consent to the publication of an allegedly malicious slander. See F. Harper & F. James, *supra* at § 5.17. Cf. *Remington* v. *Congdon*, 2 Pick. 310, 314-315 (1824) (where the plaintiff voluntarily submitted to investigation of complaint by the church, libel action could not be sustained without showing of express malice). As shown later in this opinion, there was sufficient evidence from which the jury could find that malice motivated the defendant Lauber when he uttered the statements in question. The cases relied on by the defendants for this argument are unlike the case at bar in that they involved no evidence of malice. *Joftes* v. *Kaufman*, 324 F. Supp. 660, 662 n.1 (D.D.C. 1971). *DeLuca* v. *Reader*, 227 Pa. Super. Ct. 392, 400 (1974).

Thus, the policy considerations presented by the defendants do not warrant the extension of the doctrine of absolute privilege to grievance proceedings. The judge erred in

entering judgments notwithstanding the verdict for the defendants on this ground.

2. *Evidence of Malice.*

The defendants contend that judgments notwithstanding the verdict were properly granted even if the defendants did not have an absolute privilege. Although the judge granted their motion for judgments notwithstanding the verdict on the erroneous belief that an absolute privilege did exist, the granting of the motion will be affirmed if there is any valid basis on which the motion should have been allowed. See *Alholm* v. *Wareham,* 371 Mass. 621, 625 (1976). The defendants' motions for directed verdicts and for judgment notwithstanding the verdict were based on the alternative ground that there was insufficient evidence to warrant a finding of actual malice or abuse of the qualified privilege.

A plaintiff carries the burden of showing that the privilege was extinguished by the defendants' malice. *Sheehan* v. *Tobin,* 326 Mass. at 192. *Bander* v. *Metropolitan Life Ins. Co.,* 313 Mass. 337, 344 (1943). Malice has been stated to require evidence of "an improper motive," *Hartmann* v. *Boston Herald-Traveler Corp.,* 323 Mass. 56, 65 (1948), or an intent to abuse the occasion by resorting to it "as a pretence," *Remington* v. *Congdon, supra* at 315, or "reckless disregard" of the rights of another, *Retailers Commercial Agency, Inc., petitioner,* 342 Mass. at 521. Cf. *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849 (1975). See also *Boston Mut. Life Ins. Co.* v. *Varone,* 303 F.2d 155, 159 (1st Cir. 1962).[4]

Viewing the evidence in the light most favorable to the plaintiff, *Alholm* v. *Wareham, supra* at 623, we believe that the jury properly could have determined that the defendant Lauber abused the conditional privilege by knowingly lying or knowingly accusing the plaintiff of theft for the improper

---

[4]The Restatement (Second) of Torts § 603 (1977) eliminates all reference to the often misused term "malice" and states that the privilege is lost if the publication is not made chiefly for the purpose of furthering the interest which is entitled to protection. See W. Prosser, Torts § 115, at 795 (4th ed. 1971).

purpose of securing the plaintiff's discharge from employment. The jury could have inferred that the defendant Lauber made this accusation to the grievance board to effectuate the defendant Jones's desire to rid itself of an employee whose industrial accidents cost the company too much money. Evidence of this improper motive could be found from the testimony concerning statements made by Drake, the regional manager of the defendant Jones, and Neill, the terminal manager.

The defendants claim, however, that the judge erred in admitting evidence that both Neill and Drake had stated they were going to get rid of the plaintiff because he cost the defendant Jones too much compensation money as a result of his numerous accidents. The defendants argue that the plaintiff produced no evidence that either man was authorized to make these statements and thus bind their principal, the defendant Jones. There was evidence, however, that Drake and Neill had the authority to fire the plaintiff. They therefore acted within the scope of their employment when they told the plaintiff the grounds they had for wanting to discharge him. See *Bander* v. *Metropolitan Life Ins. Co.*, *supra* at 348.

The defendants next contend that no causal connection existed between the managers' statements and the subsequent alleged slander by the defendant Lauber at the grievance hearing. The defendants rely on *Boston Mut. Life Ins. Co.* v. *Varone, supra* at 159. In that case the court held that if the motivating force for the publication of an allegedly defamatory statement is shown not to be the defendant's ill will, then the existence of ill will is immaterial. See *Bander* v. *Metropolitan Life Ins. Co., supra* at 350 (ill will of defendant company's president unrelated to malice of defendant's agents concerned with the publication).

The jury could have found that the ill will expressed in the statements made by Neill and Drake was the motivating force for the publication of this alleged slander. Linking the defendant Lauber with the two managers was evidence that Lauber worked for the FBI as an informant against the de-

fendant Jones's employees and that Neill and Drake knew of this activity. Although the conclusion is by no means compelling, the jury could have inferred that the defendant Lauber, in his capacity as informant, acted on the managers' desire to rid the defendant Jones of costly employees like the plaintiff. Neill's and Drake's statements, made only two months prior to the plaintiff's discharge for dishonesty and one year prior to the publication of the alleged slander, are not so remote as to cease being causative factors in the publication. Cf. *Ponticelli* v. *Mine Safety Applicance Co.,* 104 R.I. 549, 558 (1968). Thus, these statements were properly admitted and are sufficient evidence of malice to destroy the qualified privilege enjoyed by the defendants.

3. *Charge to the Jury.*

There is no merit in the defendants' several arguments with respect to the judge's charge to the jury. The defendants argue that the judge committed reversible error in permitting the jury to infer actionable slander from the statement uttered by the defendant Lauber. In his charge, the judge stated, "[I]f you find that what Mr. Lauber said was, 'I saw Mr. Ezekiel put something into his automobile and then I called the FBI,' if you conclude that those were the words that he used, and if you feel that the reasonable import of such words was the accusation of a crime, then, again, Mr. Ezekiel has sustained his burden in proving the first element." We find no error. Before giving this example, the judge clearly informed the jury that the plaintiff had the burden of proving that Lauber accused the plaintiff of the crime of larceny or dishonest conduct as an employee. The judge properly allowed the jury to determine whether in the context of a hearing to determine grounds for discharge, the above statement imputed a crime. Also, there is no validity to the defendants' argument that this portion of the charge permitted the jury to draw an inference of malice without a finding of the particular words spoken.

Next, the defendants claim that the judge erred by failing to instruct the jury that they must apply the clear and convincing proof standard rather than the less stringent fair

preponderance of the evidence test in finding malice. In the absence of a specific request or objection properly presented to the judge, we need not decide this issue. *Kane* v. *Fields Corner Grille, Inc.,* 341 Mass. 640, 646 (1961).

We turn finally to the defendants' claim that the judge erred in failing to give their requested instruction involving the plaintiff's burden of proof on the issue of malice or abuse of privilege.[5] The judge, however, adequately charged the jury on the issue of malice, and since the method of publication was not at issue he need not have charged with respect to the burden of proving unnecessary, unreasonable, or excessive publication. See *Holmes* v. *Sullivan,* 241 Mass. 195, 196 (1922).

4. *Conclusion.*

Accordingly, we reverse the judgment notwithstanding the verdict with directions that the jury verdicts be reinstated and judgments reentered for the plaintiff against each of the defendants.

*So ordered.*

---

[5] The defendants requested that the following instructions be given to the jury: "The plaintiff has the burden of proving either that there was actual malice on the part of the defendants or that there was abuse by the defendants of their conditional privilege by an unnecessary, unreasonable or excessive publication of the defamatory matter. *Bander* v. *Metropolitan,* 313 Mass. 337, 344 [1943]. *Galvin* v. *N.Y., N.H. and H.R.R. Co.,* 341 Mass. 293, 297 [1960]."