Willard A. THOMPSON, Petitioner,

v.

PUBLIC SERVICE COMPANY OF COL-
ORADO, a corporation; and R.M. Rich-
ards a/k/a Mark Richards, Respon-
dents.

No. 89SC107.

Supreme Court of Colorado,
En Banc.

Oct. 22, 1990.

Joseph P. Genchi, Estes Park, for petitioner.

David W. Kerber and Kevin W. Hecht; Kelly, Stansfield & O'Donnell, Denver, for respondents.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Thompson v. Public Service Co.*, 773 P.2d 1103 (Colo.Ct. App.1988), affirming a summary judgment against the plaintiff in a defamation action against his employer. We reject the conclusion of the court of appeals that, under federal labor law, statements made by an employer in a notice of discipline may not be the basis of a defamation action, and we reverse the decision of the court of appeals because we conclude that under state law the trial court improperly granted summary judgment on the plaintiff's claims.

### I.

The plaintiff, Willard A. Thompson, was formerly an employee of the defendant, Public Service Company of Colorado (Public Service).[1] He is now retired. During the periods relevant to this dispute, Thompson's supervisor was defendant R.M. Richards; Public Service workers were represented by Local Union No. 111 of the International Brotherhood of Electrical Workers (IBEW), which had entered into a collective bargaining agreement with Public Service. Thompson in his pleadings before the district court raised two separate claims of defamation. The first claim is related to the events of November 17, 1983. On that day, Thompson and two other employees were sent to the state steam plant in Denver to perform maintenance work on the boilers in the basement. At some point, Thompson's companions left the building to retrieve supplies. Thompson thereafter left his work area and went upstairs to an area frequented by state employees. He saw a bulletin board, on which was posted a notice of a Christmas party for state employees. Thompson then attempted to learn who was in charge of the party so that he could offer to play the piano or organ at the party. Thompson indicated in his affidavit before the trial court that, on prior occasions, persons had engaged him to provide musical services at various private functions. According to Thompson, the persons working in the area were unresponsive and he subsequently departed the area without incident.

Shortly thereafter, according to Richards, Vic Cook, a supervisor of state employees at the steam plant, telephoned Richards and told him that Thompson's contacts with state employees constituted a "nuisance." Following Cook's complaint, Richards removed Thompson from the state plant and summoned him to a meeting with Richards and the union steward, who was present because of the potential for the imposition of discipline on Thompson. According to Richards, his subsequent investigation revealed that Thompson, on November 17, 1983, was loitering about the administrative offices at the state steam plant, copying the telephone numbers and the names of the female employees. Further, Thompson allegedly asked the employees "personal questions" concerning their Christmas party and their phone numbers. Richards stated in his deposition that he believed "this unwanted attention by plaintiff toward the female employees constituted sexual harassment."

On December 6, 1983, Richards issued a letter of disciplinary suspension, informing

---

1. Because this action was disposed of on summary judgment, we must reconstruct the factual background from the parties' pleadings, affidavits and depositions. To the extent there is a factual dispute, we defer to the allegations made by the plaintiff in the trial court.

Thompson that he was suspended for five days without pay. The disciplinary action, according to the letter, was "based on [Thompson's] poor work performance, creating a nuisance for customer employees and sexual harassment and/or unwanted contact of customer employees." Copies of the suspension letter were given to Ray L. Dudley, Thompson's second-level supervisor, Ken L. Barnett, a Public Service production manager and third-level supervisor, and Public Service's Labor Relations Department. A copy of the letter was also given to the IBEW union steward and a copy was placed in Thompson's personnel file. Pursuant to the collective bargaining agreement between Public Service and the IBEW, Thompson challenged the suspension through a "Step 1 Grievance." At the initial grievance review, Thompson was denied relief. However, upon further review [Step 2 review] on January 19, 1984, the five-day suspension was reduced to two days and the word "sexual" was removed from the discipline letter so that it merely stated "harassment." Thompson did not contest further the disciplinary action.

Thompson's second claim for defamation stemmed from a June 29, 1984 reprimand for "falsification of time card." That charge was based on Thompson's completion of a time card for June 5, 1984, as a day on which he took "sick leave." According to Richards, because Thompson failed to obtain a doctor's excuse for the sick day, and because this requirement had previously been made known to Thompson, the filing of the time card "constituted a falsification of the time card." Copies of this written reprimand were once again sent to the two higher level Public Service supervisors, as well as to the IBEW and the Public Service Labor Relations Department. A copy of the second reprimand was also placed in Thompson's personnel file. After a meeting between Thompson and his third-level supervisor Barnett, the reprimand was revised so as to delete the reference to "falsification," stating instead that Thompson's incorrect entry on his time card indicated that he "ignor[ed] the required policy/procedures" and this conduct constitut-

ed "malingering." Thompson did not challenge this disciplinary action.

On December 3, 1984, Thompson filed this action in Denver District Court against Public Service and Richards, alleging defamation on the basis of the two letters of reprimand. On Public Service's motion for summary judgment, the district court ruled that Public Service's statements in the discipline notices were protected by a qualified privilege under state law, and that because no genuine issue of fact existed concerning the question of malice, summary judgment was appropriate. The court of appeals affirmed the judgment of the trial court on a different legal theory. It held that under § 301 of the Labor Management Relations Act of 1947 (the LMRA), 29 U.S.C. § 185 (1982), statements made in written notices of discipline leading up to a grievance procedure as provided for in a collective bargaining agreement are protected by an "absolute privilege" precluding the bringing of a state law defamation claim based on such statements. *Thompson v. Public Serv. Co.*, 773 P.2d at 1106. We granted certiorari to consider whether federal labor law, under the circumstances of this case, requires the recognition of an unqualified rather than a qualified privilege, as previously recognized by this court under state law with respect to statements similar to those made here.

### II.

### A.

Before addressing the scope of the privilege with respect to the statements contained in the discipline notices in this case, we note that this court has already decided this issue under Colorado law, most recently in *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). In *Churchey*, we applied well-established Colorado case law in finding that the statements made by the employer Coors to the employee Churchey explaining that she had been terminated because of "dishonesty" were protected by a qualified privilege. In the face of a defendant's qualified privilege, we held that a plaintiff could recover on a defamation claim only by showing that the defendant

"publishe[d] the material with malice, that is, knowing the matter to be false, or act[ed] in reckless disregard as to its veracity." *Churchey*, 759 P.2d at 1346 (*quoting Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo.1986)). *See also Abrahamsen v. Mountain States Tel. & Tel. Co.*, 177 Colo. 422, 494 P.2d 1287 (1972) (qualified privilege applies as to inter-office memoranda); *Denver Pub. Warehouse Co. v. Holloway*, 34 Colo. 432, 83 P. 131 (1905) (qualified privilege protects the right of corporate officers to communicate with one another about their employees' conduct). *Churchey* and the earlier cases clearly establish that, under Colorado law, statements such as those made by the defendants here are protected by a qualified privilege, not by an unqualified privilege.

Thus, unless the defendants can show that federal law requires a different standard under the facts of this case, we must conclude that the statements were protected by a qualified privilege. In urging that we recognize an unqualified privilege under the facts of this case, defendants argue that to hold otherwise would "interfere with the discipline, grievance, and arbitration process contrary to federal labor policy arising under section 301 of the LMRA." However, we do not agree that § 301 supports the recognition of an unqualified privilege under federal law.

### B.

The Supreme Court on a number of occasions has stated the test for determining whether § 301 "preempts" state law tort claims. Most relevant to the circumstances presented by this case is *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The employee in that case pursued a remedy provided by the grievance procedure established under the collective bargaining agreement between her union and the company. *Lingle*, 486 U.S. at 401, 108 S.Ct. at 1879. Simultaneously with the grievance procedure, however, the employee filed a wrongful discharge action in state court alleging that the defendant had fired her, contrary to the public policy of the state,

because she filed a worker's compensation claim. *Id.* at 402, 108 S.Ct. at 1879. Both the federal district court and the Seventh Circuit Court of Appeals held that the state law claim was "inextricably intertwined" with the collective bargaining agreement and thus the state law claim was preempted. *Id.*

The Supreme Court disagreed, reaffirming its test for determining whether § 301 preempts a state tort law claim:

[I]f the resolution of the state-law claim depends upon the meaning of the collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute."

*Id.* at 405–06, 108 S.Ct. at 1881. The court applied this test to the facts presented by *Lingle* and found that the state law claim for wrongful discharge was not preempted under § 301, even though the collective bargaining agreement in *Lingle* established a procedure for resolving claims that an employee's termination was not for just cause. *Id.* at 407, 108 S.Ct. at 1882. The Court held that the resolution of the Illinois wrongful discharge claim did not require the trial court to interpret any term of the collective bargaining agreement. *Id.* Thus, the state law remedy was "independent" of the collective bargaining agreement. The Supreme Court rejected the court of appeals' reasoning that the state law claim must be barred because "a state court would be deciding precisely the *same issue* as would an arbitrator: whether there was 'just cause' to discharge the worker." *Id.* at 408, 108 S.Ct. at 1882 (*quoting* decision below, 823 F.2d 1031, 1046 (7th Cir.1987)) (emphasis supplied by the Supreme Court). In summary the Court concluded:

[E]ven if the dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-

law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

*Id.* at 409–10, 108 S.Ct. at 1883.

In support of their position that § 301 preempts Thompson's libel action here, the defendants point to a number of state and federal decisions, including *General Motors Corp. v. Mendicki,* 367 F.2d 66 (10th Cir.1966). Most of these cases, including *Mendicki,* predate the 1988 *Lingle* decision and their continuing validity is questionable. In *Mendicki,* the court of appeals reviewed a judgment in favor of the plaintiff on his claim that a company representative had slandered him at a grievance proceeding by stating that the company had known for years that the plaintiff had been taking property from the plant. *Mendicki,* 367 F.2d at 70. The statement was made at a hearing which was part of the process for appealing a grievance under a collective bargaining agreement between the employer and the union representing the employees. *Id.* at 68. In reversing the judgment in favor of the plaintiff, the court concluded that statements made at a grievance conference are unqualifiedly privileged. The court stated:

> If the representatives of either employer or employee were subject to an action for damages because of statements made of what they claimed to be the pertinent facts respecting a controversy under consideration and of their position respecting such matter and the reasons therefor, at a conference or collective bargaining session being held to adjust such controversy, the likelihood of the attainment of peaceful adjustments on disposition of the issues involved between them through the conference or bargaining processes would be greatly decreased.

*Id.* at 71. The *Mendicki* court did not specifically point to § 301 as providing the basis for its holding that the employer's statements in that case were protected by an unqualified privilege. In addition, it is not clear whether the holding of "unqualified privilege" in *Mendicki* was based on state or federal law. By using the term "privilege" rather than stating that state

law and jurisdiction were preempted, the court in *Mendicki* may have indicated it was applying state defamation law, not ruling that state defamation remedies were preempted. *See, e.g.,* Comment, *The Availability of Defamation Remedies for Statements Made During the Course of Labor Grievance Arbitration Proceedings,* 15 U.Kan.L.Rev. 553 (1967) (making a similar argument). Nevertheless, some subsequent cases have interpreted the *Mendicki* opinion as establishing an "unqualified privilege" under federal labor law.

In *Hasten v. Phillips Petroleum Co.,* 640 F.2d 274 (10th Cir.1981), the court of appeals reaffirmed the validity of *Mendicki* and extended it beyond the context of the grievance proceeding to cover a letter sent by the employer to the employee informing the employee that he was being terminated for "dishonesty." *Hasten,* 640 F.2d at 275. The *Hasten* court was clear in stating its conviction that federal labor law compelled the recognition of an unqualified privilege encompassing the statements at issue:

> We are not persuaded by the plaintiff's arguments that the instant case should be distinguished from *Mendicki* or that Supreme Court decisions now dictate a contrary rule. Considering the factors identified by the Supreme Court, we remain persuaded that federal labor law and policy require the absolute privilege rule as to communications made within the context of proceedings provided for by the collective bargaining agreement and its provisions for a grievance machinery.

*Id.* at 278. As with the *Mendicki* decision, the court in *Hasten* did not cite § 301 as the source for the unqualified privilege.

The principle of "unqualified privilege" recognized in *Mendicki* and *Hasten* has been followed in some federal court decisions, but the courts are often imprecise in stating the basis for their holdings. *See Shane v. Greyhound Lines, Inc.,* 868 F.2d 1057 (9th Cir.1989) (unqualified privilege protects statements made in employer's notice of intent to discipline); *Hyles v. Mensing,* 849 F.2d 1213 (9th Cir.1988) (federal labor policy and federal labor law require

recognition of privilege so as to bar state defamation claims based on statements made in grievance proceedings); *Hull v. Central Transp., Inc.*, 628 F.Supp. 784 (N.D.Ind.1986) (statements made in grievance proceedings are absolutely privileged, apparently under § 301 of LMRA); *Green v. Hughes Aircraft Co.*, 630 F.Supp. 423 (S.D.Cal.1985) (statements in employer's initial discipline report stating that plaintiff employee had stolen a sandwich protected by absolute privilege); *Brooks v. Solomon Co.*, 542 F.Supp. 1229 (N.D.Alabama 1982) (absolute privilege for statements made at grievance hearing). *Accord, Surrency v. Harbison*, 489 So.2d 1097 (Ala.1986); *Louisville & Nashville R.R. Co. v. Marshall*, 586 S.W.2d 274 (Ky.Ct.App.1979). Other federal cases specifically have held that § 301 preempts state law defamation claims. *See Willis v. Reynolds Metals Co.*, 840 F.2d 254 (4th Cir.1988) (employee's state law claim that personnel manager slandered her during informal discipline meeting preempted by § 301); *Seid v. Pacific Bell, Inc.*, 635 F.Supp. 906 (S.D.Cal. 1985) (§ 301 preempts state claim for defamation based on statements made in investigation subject to collective bargaining agreement).

Some state courts which have recognized an absolute privilege either have done so under state law or have been unclear whether their recognition of the privilege was under state or federal law. *See Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986); *Rougeau v. Firestone Tire & Rubber Co.*, 274 So.2d 454 (La.Ct.App.1973); *Fulghum v. United Parcel Serv.*, 424 Mich. 89, 378 N.W.2d 472 (1985); *Turner v. Gateway Transp. Co.*, 569 S.W.2d 358 (Mo. Ct.App.1978); *Kloch v. Ratcliffe*, 221 Neb. 241, 375 N.W.2d 916 (1985); *Agriss v. Broadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984). *See also* Annotation, *Libel and Slander: Privileged Nature of Communications Made in Course of Grievance or Arbitration Procedure Provided for by Collective Bargaining Agreement*, 60 A.L.R.3d 1041 (1974).

Other courts, however, have not agreed that federal labor law requires an absolute privilege to be granted to statements made in the course of a grievance proceeding or in related written documents and oral discussions. State courts in New York, Massachusetts, Illinois and Ohio have rejected the holdings of *Mendicki* and *Hasten*. In *Bird v. Meadow Gold Products Corp.*, 60 Misc.2d 212, 215–216, 302 N.Y.S.2d 701, 704–705 (N.Y.Sup.Ct.1969), the court rejected the reasoning of *Mendicki* and applied principles of qualified immunity under New York law even though the plaintiff employee claimed that his employer had slandered him in the course of a conference held pursuant to a collective bargaining agreement between his union and his employer. The Supreme Judicial Court of Massachusetts in *Ezekiel v. Jones Motor Co.*, 374 Mass. 382, 372 N.E.2d 1281 (1978), agreed with the New York court's opinion in *Bird* and held that a qualified privilege applied to statements made in the course of a grievance procedure covered by a collective bargaining agreement. The court stated:

> We prefer the approach taken in *Bird v. Meadow Gold Prod. Corp., supra,* where the New York court rejected the *Mendicki* rationale and held that allegedly defamatory statements were qualifiedly privileged when made at a conference pursuant to a collective bargaining agreement. The court found no congressional legislation specifically governing defamatory actions predicated on statements made during a labor grievance proceeding nor prohibiting a State court from regulating conduct in a manner consistent with national labor policies.

*Ezekiel*, 374 Mass. at 388, 372 N.E.2d at 1285. The court went on to hold that the policy concerns raised by the Tenth Circuit Court in *Mendicki* were sufficiently safeguarded by applying principles of qualified privilege stating:

> While the defendants do not clearly argue that this slander action in the State court is preempted by Federal labor legislation, they do urge that they should be immune from liability to avoid frustrating the policies expressed in this Federal labor legislation. Protecting its residents from slander has long been a concern of the Commonwealth. A grant of

the conditional privilege provides a sufficient safeguard against the dampening of free discussion of the pertinent facts important to the peaceful adjustment of grievances.

*Ezekiel*, 374 Mass. at 389, 372 N.E.2d at 1286. *Accord Fisher v. Illinois Office Supply Co.*, 130 Ill.App.3d 996, 86 Ill.Dec. 66, 474 N.E.2d 1263 (1984); *see also Bailey v. Sams*, 24 Ohio App.3d 137, 493 N.E.2d 966 (1985).

■ In our view, § 301 does not preempt Thompson's state law defamation claims. Here, as in *Lingle*, the resolution of the state law claims does not require the interpretation of the collective bargaining agreement. Each element of Thompson's case may be resolved without reference to the collective bargaining agreement. Moreover, this case presents a stronger case for permitting the state law action than *Lingle*. In *Lingle* the grievance proceeding and the wrongful discharge action decided, arguably, precisely the same issue: whether termination of the employee was proper. In contrast, a grievance proceeding like the one involved in this case does not necessarily decide the truth of the matters asserted in a letter of discipline, but in many instances may focus narrowly on the appropriateness of the particular discipline imposed.

■ The determinations in the grievance proceedings here, that the notices should be modified to change "sexual harassment" to "harassment" and to delete the reference to "falsification" of a time card, did not necessarily resolve the merits of the accuracy of these accusations. Rather, the changes may reflect a compromise entered into simply to resolve a dispute between an employee represented by a union and management. In any event, there was not a specific finding made as to the truth or falsity of the accusations made in the notices of discipline. To hold that a grievance is the sole remedy of an employee allegedly libeled by an employer would unjustly limit the employee's ability to remedy damage to his reputation. The collective bargaining agreement simply provides no mechanism for vindicating an employee's interest in protecting his good name from unjustified, knowingly false accusations of serious misconduct.

### C.

■ We also reject the contention that an unqualified privilege is required under the rubric of "national labor policy." No United States Supreme Court decision has so held and, to the contrary, existing Supreme Court precedent suggests that a qualified privilege suffices.

In support of its holding recognizing the unqualified privilege, the Tenth Circuit Court of Appeals in *Hasten* explained its earlier *Mendicki* decision by stating that the recognition of the unqualified privilege was required because "the libel action would clearly call for adjudication of the merits of the allegations of dishonesty which were the core issue in the grievance proceeding." *Hasten*, 640 F.2d at 279. However, as noted above, this reasoning is undercut by the Supreme Court's decision in *Lingle* permitting a wrongful discharge claim to go forward in state court even though, under the terms of a collective bargaining agreement, a grievance procedure was established for determining whether an employee had been discharged for "just cause."

Moreover, the "qualified privilege" standard articulated by this court in *Dominguez* and *Churchey* is virtually indistinguishable from the standard approved by the Supreme Court in *Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), and *Linn v. United Plant Guard Workers Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). In *Linn*, the Court held that federal labor law permits the maintenance of a state law libel action by an official of an employer against a union for statements made during an organizing campaign. *Linn*, 383 U.S. at 55, 86 S.Ct. at 659. The Court recognized that the state had an "overriding state interest" in protecting its residents from malicious libels. *Id.* at 61, 86 S.Ct. at 662. The Court acknowledged that, to some extent, permitting the state

law actions would conflict with the policies of the National Labor Relations Act, 29 U.S.C. § 141 *et seq.* (1964 ed.), of encouraging free debate. *Id.* at 64, 86 S.Ct. at 664. However, the Court held that this risk could be minimized by allowing recovery on a state libel law action only if the plaintiff proves that the defendant acted with "malice" as defined by the Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *Id.* at 65, 86 S.Ct. at 664. In *Letter Carriers,* the Court reaffirmed its holding that a plaintiff could recover in a state libel law action in the labor dispute context only by proving that a defamatory publication was made with "knowledge of falsity or reckless disregard of the truth." *Letter Carriers,* 418 U.S. at 281, 94 S.Ct. at 2779.

The federal interest in free debate in the labor dispute context would seem to be quite similar to the federal interest in encouraging frank discussion in the context of a grievance proceeding or a disciplinary action. The federal interest in maintaining a national labor policy is adequately safeguarded by requiring that the plaintiff, in order to recover in a defamation action based upon statements made in a grievance proceeding, prove that the defamatory statements were made with knowledge of their falsity or with reckless disregard for whether or not they were true or false. Thus, we hold that a state law defamation action based upon statements made in a grievance or disciplinary proceeding may go forward when the state law recognizes a qualified privilege for communications made in the course of the disciplinary or grievance proceedings.

### III.

Finally, we must consider whether summary judgment was proper here on Thompson's state law claim. In making this determination, we are guided by this court's decision in *Churchey,* 759 P.2d 1336. In *Churchey,* as here, the district court granted summary judgment against an employee on her defamation claim against her employer. *Churchey,* 759 P.2d at 1338. In *Churchey,* the plaintiff claimed that her

employer libeled her by stating that the reason for her discharge was "dishonesty." *Id.* at 1341. In addressing the question of whether summary judgment was proper in that case, we engaged in a useful review of the relevant principles governing summary judgment. We stated:

> Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. The party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. The same standards should be applied by an appellate court reviewing a summary judgment order.

*Id.* at 1339–40 (citations omitted). Thus, as in *Churchey,* we must determine whether the defendants met their burden of proving that there are no relevant issues of material fact and that Public Service and Richards are entitled to judgment as a matter of law on Thompson's defamation claims.

■ To prove a claim for defamation against an employer a plaintiff must show that the employer published a false statement of defamatory fact. *Id.* at 1341. If the communication is protected by a "qualified privilege," then the plaintiff may recover only if he proves that the defendant "publishe[d] the material with malice, that is, knowing the matter to be false, or act[ed] with reckless disregard as to its veracity." *Id.* at 1346 (citations omitted). According to *Restatement (Second) of Torts,* "[r]eckless disregard exists when there is a high degree of awareness of probable falsity or serious doubt as to the truth of the statement." *Restatement (Second) of Torts* § 600 comment b (1977). Here, the trial court properly ruled that Richards' statements were protected by a qualified privilege.

■ In support of their motion for summary judgment, the defendants filed with the trial court a number of affidavits as

well as excerpts from depositions. Defendant Richards' affidavit described his view of the circumstances surrounding the alleged incident of sexual harassment stating:

I suspended Plaintiff for his conduct on November 17, 1983 because, as I was told, he had been loitering around the State Administrative Offices, he had been copying the telephone numbers and names of the State female employees from the desk name plates, and he had been interrupting the female employees with personal questions concerning their Christmas parties and asking for their telephone numbers. I believe this unwanted attention by the Plaintiff toward the female employees constituted sexual harassment.

Richards also stated his basis for charging the defendant with falsification of a time card, stating:

I reprimanded Plaintiff for his conduct in June 1984 when he asserted on his time card that he was on paid sick leave for June 5, 1984 when in fact he had not procured the required doctor's authorization to be authorized sick leave.

Finally, Richards stated:

At the time, I disciplined Plaintiff for sexual harassment and falsification of his time card I believed that he had committed those acts and still so believe. I held no ill will toward Plaintiff before, during or as a result of the discipline I imposed upon him.

Thompson filed an affidavit in which he denied both the allegations of sexual harassment and falsification of the time card and presented a detailed version of the facts that was substantially different from Richards' version of the two incidents. Thompson also alleged in his affidavit that the charges "were part of an ongoing series of incidents and conduct on the part of Richards which clearly showed to me that he had malicious motives with regard to me."

In addition, Vic Cook, the supervisor who phoned Richards to complain about Thompson's conduct toward the state employees, never complained that Thompson's conduct constituted sexual harassment. Cook's letter to Richards described Thompson as a "nuisance." Richards testified in his deposition that Cook *implied* that Thompson had sexually harassed female employees, but Richards acknowledged in his deposition that he was unable to substantiate his charge of sexual harassment by reports from the alleged victims, although he made numerous requests for such substantiating reports. Finally, with respect to the charge of falsifying his time card, Thompson alleged in his affidavit that Richards' superior, Kenny Barnett, labelled the charge "ridiculous" and marked the reprimand "void."

Giving Thompson the benefit of all favorable inferences that may be drawn from these facts, as we are compelled to do, we conclude that Thompson has demonstrated that a genuine issue of fact exists with respect to whether Richards knew of the falsity of his statements or acted with reckless disregard as to the falsity of his statements contained in the letters in question.

Accordingly, we reject the court of appeals' analysis and we reverse its judgment upholding the trial court's order granting summary judgment for the defendants. The court of appeals is directed to remand the case for trial on Thompson's defamation claims.

VOLLACK, J., does not participate.