William E. HASTEN, Plaintiff-Appellant,

v.

PHILLIPS PETROLEUM COMPANY and American Stevedoring Corporation, Defendants-Appellees.

No. 77–1808.

United States Court of Appeals, Tenth Circuit.

Argued April 18, 1979.

Decided Feb. 6, 1981.

John Ivan of Ivan & Earnshaw, Shawnee Mission, Kan., for plaintiff-appellant.

David K. Fromme, Overland Park, Kan. (Weeks, Thomas, Lysaught, Bingham & Mustain, Chartered, Overland Park, Kan., were with him on brief) for defendant-appellee, American Stevedoring Corp.

Robert D. Benham, McAnany, Van Cleave & Phillips, P. A., Kansas City, Kan., on brief for defendant-appellee, Phillips Petroleum Co.

Before SETH, Chief Judge, and HOLLOWAY and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

In this diversity action plaintiff-appellant William E. Hasten seeks reversal of a summary judgment entered in favor of the

defendants-appellees Phillips Petroleum Company (Phillips) and American Stevedoring Corporation (American). The plaintiff seeks to recover damages for an allegedly malicious libel by a letter to him from American notifying him of his discharge from employment on the asserted basis of dishonesty.[1] After discovery was completed and a pretrial conference held, Phillips and American filed motions for summary judgment. Argument on the motions was heard by the district court which subsequently sustained the motions on the ground that "libel suits for termination or suspension notices or statements specifically contemplated by a collective bargaining agreement are barred" under the "absolute privilege" doctrine of *General Motors Corp. v. Mendicki*, 367 F.2d 66 (10th Cir.) (II R. 269). This timely appeal followed.

## I

The following facts are undisputed. American and Phillips entered into a written agreement whereby American agreed to supply truck drivers to Phillips for the purpose of hauling and delivering petroleum products. Plaintiff was hired by American in April 1974 and assigned to drive for Phillips. On June 20, 1974, American entered into a collective bargaining agreement with Teamsters' Local Union No. 41. Upon his employment with American, plaintiff transferred his membership from Teamsters' Local Union No. 541 to Local Union No. 41 and, at all times pertinent to

this lawsuit, was subject to the provisions of the agreement between American and Local No. 41.

Article 9 of the collective bargaining agreement provides for the suspension and/or discharge of employees for infractions of work rules.[2] Under this Article an employee is generally entitled to at least one (1) written warning notice of the complaint against him prior to discharge or suspension for a rules violation. However immediate discharge, without a prior warning notice, is permitted for certain specified causes, including dishonesty. If an employee is discharged, Article 9 requires the employer to provide a written notice of discharge to the employee and the union.

Article 10 of the collective bargaining agreement provides the "grievance machinery" for settling "any controversy" which might arise between the employer, the employee, and the union. (I Supp. R.10.) This Article binds both labor and management to follow a detailed, step by step procedure for the consideration and resolution of disputes.

On June 18, 1975, American sent plaintiff a "discharge letter" notifying him that in accordance with Article 9 of the collective bargaining agreement his employment with American had been terminated for "dishonesty." (I R. 20, 52). The letter then enumerated the specific events which American relied on. In essence, the letter charged that plaintiff, while an employee of American, had driven a truck for another compa-

---

1. This action was initially brought in Kansas state court and subsequently removed by the defendants to federal district court on diversity grounds.

2. Article 9 states (I Supp. R.10):

   The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaints against an employee to the employee, in writing and a copy of the same to the Union, except that no warning notice need be given to an employee before he is discharged or suspended if the cause of such discharge is dishonesty or drinking while on duty or during meal periods or drunkenness, which may be verified by a sobriety test (Refusal to take a sobriety test shall establish a presumption

   of drunkenness); or taking, being under the influence of, addiction to, or possession of while on duty, LSD, marijuana or heroin, or other narcotics; or recklessness resulting in serious accident while on duty, or the carrying of unauthorized passengers, or violations of any Department of Transportation regulation. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from date of said warning notice. *Discharge must be by proper written notice to the employee and the Union.* Any employee may request an investigation as to his discharge or suspension. Should such investigation prove that an injustice has been done an employee, he shall be re-instated. (Emphasis added).

ny at the same time that he had made a claim for workman's compensation benefits and had told American officials that he was unable to work as a result of an earlier accident which he had while driving for Phillips.

Although there is some dispute as to who actually initiated the grievance proceedings, it is clear that such proceedings were held to determine the validity of plaintiff's discharge. After hearing the evidence from both sides, a joint committee established pursuant to the collective bargaining agreement determined that the letter of discharge should be withdrawn and that all copies of the letter be removed from plaintiff's personnel file. It also determined that the parties should select a neutral qualified physician to examine the plaintiff to determine if he was physically capable of driving a truck and that the decision of the physician would be final and binding on all the parties. After a physician was selected, the plaintiff declined to make an appointment for a physical exam. *See* III R. 43, 121–25, Exh. 1, 4.

After these grievance proceedings plaintiff brought this libel action claiming, *inter alia*, that the statement and accusations in the discharge letter were false, untrue, and malicious; that the letter was published with actual malice, ill will, and hatred toward him; and that the defamatory statements damaged his reputation and standing in the community, caused mental anguish and personal, financial, and business injury. (I R. 4–6.) Both defendants filed motions for summary judgment arguing, *inter alia*, that the statements in the discharge letter were absolutely privileged since they were required by the collective bargaining agreement. (I R. 89, 96; II R. 153, 252, 245). Agreeing with the defendants, the district court held that termination notices contemplated by a collective bargaining agreement are absolutely privileged under the ration-

ale of *General Motors Corp. v. Mendicki, supra*, and that libel suits based on such notices are "barred." (II R. 268–69).

On appeal plaintiff argues that no privilege should apply under *Mendicki* as to statements not made in course of actual grievance or arbitration proceedings, that the *Mendicki* case did not involve a knowingly false and malicious statement as does this case, that Supreme Court decisions recognize the availability of state tort actions in cases of actual malice, and that Kansas law which provides only a conditional privilege should be applied here.

## II

■ As his first ground for reversal, plaintiff argues that in any event the doctrine of unqualified or absolute privilege does not apply to libelous statements made outside of the collective bargaining and grievance process provided for in the collective bargaining agreement. More specifically, he says that the discharge letter, which was allegedly libelous, was not a statement made as a part of a bargaining session as in *Mendicki*.

It is true that the statements in question were made in the June 18, 1975, discharge letter,[3] and were not statements made during a conference or proceeding relating to a grievance. The district court held, however, that the distinction between statements made in the course of a bargaining session to adjust a grievance and the statements in the discharge letter was of little significance and that the federal policy encouraging collective bargaining and frankness in labor disputes applies to termination notices as well as to bargaining sessions. (II R. 269).

We agree. Article 9 of the agreement requires that "[d]ischarge must be by proper written notice to the employee and the

---

**3.** The letter of discharge from American to the plaintiff stated in part:

Dear Mr. Hasten:

In accordance with Article 9 of the labor agreement between American Stevedoring Corporation and Teamsters Local Union 41,

you are hereby discharged from employment with American Stevedoring Corporation for dishonesty.

Elaboration on this statement followed, setting out the detailed allegations discussed earlier in the text.

Union." (I Supp. R.10). Thus, the discharge letter was a step required by the agreement. A subsequent challenge to the discharge would seem clearly to premise a "dispute" subject to the grievance machinery provided by Article 10 of the agreement. (I Supp. R.10). Thus, with respect to a grievance and arbitration proceeding, the discharge letter was a part of the entire proceeding contemplated by the provisions of the agreement for the grievance machinery. *See Marsh v. Pacific Motor Trucking Co.*, 77 Lab.Cas. (CCH) ¶ 11,135 at 19,894 (U.S.D.C., C.D.Cal.); *Macy v. Trans World Airlines, Inc.*, 381 F.Supp. 142, 148 (W.D. Va.).

Therefore, the written discharge notice comes within the grievance procedure and is not beyond the protection of the *Mendicki* decision merely because it was the initial notice triggering the procedure, and not a statement made during oral grievance proceedings.

### III

The more serious question before us is whether the unqualified privilege recognized in *Mendicki* applies to this libel action where the plaintiff claims that the libelous statements of dishonesty were "false, untrue and malicious, and were made by defendant [American], who knew or had reason to know that such statements were false, untrue and malicious, or who had reckless disregard for the truth or the falsity of such statements." (I R. 4).

Plaintiff argues that an unqualified privilege should not apply here, that the court in *Mendicki* was not faced with a malicious and knowingly false defamatory statement, that under principles announced in Supreme Court decisions libel actions can be maintained if the defamatory publication was made with knowledge that it was false or with reckless disregard for whether it was false or not, and that the Kansas law of qualified privilege should be applied. (Appellant's Brief at 11, 15–17).

We must examine some of the decisions dealing with situations where state or federal claims may be barred or preempted.

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, the Supreme Court provided general guidelines for determining the "extent to which the variegated laws of the several States are displaced by a single, uniform, national rule." *Id.* at 241, 79 S.Ct. at 777. It concluded that federal and state court jurisdiction over a given class of cases was not preempted by federal labor policy where the activity in question "was a merely peripheral concern of the Labor Management Relations Act .... [o]r where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Id.* at 243–44, 79 S.Ct. at 778–79; *accord, Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 188–89 n.13, 98 S.Ct. 1745, 1752–53 n.13, 56 L.Ed.2d 209.

In disposing of preemption questions the Supreme Court has generally focused on three factors: (1) whether there exists a potential for direct conflict between federal labor law and policy and the state or federal cause of action; (2) whether there is a state interest which is "deeply rooted in local feeling and responsibility;" and (3) whether adjudication of the federal or state cause of action interferes with the effective administration of national labor policy by deciding issues which are identical to those underlying the labor dispute. *Silkwood v. Kerr McGee Corp.*, 637 F.2d 743, 746 (10th Cir.); and see *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, supra*, 436 U.S. at 196–97, 98 S.Ct. at 1757; *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 298, 97 S.Ct. 1056, 1062, 51 L.Ed.2d 338.

In *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582, the Court held that the preemption doctrine articulated in *Garmon* did not bar the maintenance of a civil action instituted under state law for libelous statements made by either side during a union organizing campaign so long as "the complainant pleads and proves that

the statements were made with malice and injured him." *Id.* at 55, 86 S.Ct. at 659. The Court noted that the underlying conduct—the intentional publication of defamatory material known to be false—was not protected under federal labor law and thus the exercise of state jurisdiction over defamation actions arising from such conduct would be a "merely peripheral concern" of federal labor law within the meaning of *Garmon,* provided that appropriate limitations were imposed to insure that the freedom of speech envisioned by the federal labor laws was protected. *Id.* at 61, 65, 86 S.Ct. at 662, 664; *see also Farmer v. United Brotherhood of Carpenters & Joiners, supra,* 430 U.S. at 298–99, 97 S.Ct. at 1757–58; *Letter Carriers v. Austin,* 418 U.S. 264, 271, 94 S.Ct. 2770, 2774, 41 L.Ed.2d 745. The Court also recognized that the state had an "overriding" interest in protecting its residents from malicious libels and that this interest was "deeply rooted in local feeling and responsibility." *Id.* 383 U.S. at 61–62, 86 S.Ct. at 662–63. Finally the Court determined that a state cause of action for defamation would not interfere with the effective administration of national labor policy since the remedies and the crucial issues in a defamation action are different from those involved in a hearing before the National Labor Relations Board. *Id.* at 63–64, 86 S.Ct. at 663–64.

We note that the *Mendicki* opinion itself stressed the importance in federal labor law of collective bargaining and the adjustment of issues, 367 F.2d at 70–71, quoting *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593:

> The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy.

Again, the *Mendicki* opinion stated its rationale and holding grounded on federal labor policy as follows (367 F.2d at 71–72):

> We think Congress intended that the respective representatives of employer and employee at such conferences and bargaining sessions should feel free to express their respective contentions as to the pertinent facts and the issues involved fully and frankly and to strongly support their positions with respect to the controversy, and—employing the words of Mr. Justice Fortas in his dissent in Linn—do so "untrammelled by fear of retribution for strong utterances." Otherwise, the chance for desirable fruitfulness from such conferences and bargaining sessions would be greatly lessened. Moreover, such actions for damages would create irritations between employer and employee, which would tend to impair the chance for a peaceful settlement of labor controversies between employer and employee in the future.

*       *       *       *       *       *

The question in the instant case is whether an action for damages on account of the statement upon which the instant case is predicated, made in a conference and bargaining session to adjust an employer's grievance, and which was clearly germane to the issues involved, would interfere with the national labor policy, and whether it is necessary to hold such statements unqualifiedly privileged to prevent impairment of that policy. *We conclude it is necessary to hold that the statement here involved was unqualifiedly privileged, in order to prevent impairment of that policy.* (Emphasis added).

▌ We are not persuaded by the plaintiff's arguments that the instant case should be distinguished from *Mendicki* or that Supreme Court decisions now dictate a contrary rule. Considering the factors identified by the Supreme Court, we remain persuaded that federal labor law and policy require the absolute privilege rule as to communications made within the context of proceedings provided for by the collective bargaining agreement and its provisions for a grievance machinery. The Supreme Court has emphasized the fact that it is federal policy to promote industrial stabili-

zation through collective bargaining agreements, that a major factor, in achieving industrial peace is the inclusion of a provision for arbitration of grievances in such agreements, and that arbitration of labor disputes under such agreements is "part and parcel of the collective bargaining process itself." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580.

We remain convinced that the reasoning in *Mendicki* is sound, namely that damage suits predicated on statements made in the grievance procedures would tend to interfere with frank and strong statements of positions in such proceedings. This rule should logically include the discharge letter required by the agreement as well. *See Marsh v. Pacific Motor Trucking Co., supra*, 77 Lab.Cas. (CCH) ¶ 11,135 at 19,894; *Macy v. Trans World Airlines, Inc.*, 381 F.Supp. 142, 148 (D.Md.); *Joftes v. Kaufman*, 324 F.Supp. 660, 663 (D.D.C.); *see also Honaker v. Florida Power & Light Co.*, 95 L.R.R.M. 3265, 3268–71 (M.D.Fla.).[4] In addition, we note that the Supreme Court stressed the fact that the state tort action could be maintained "without resolution of the 'merits' of the underlying labor dispute," in *Farmer v. United Brotherhood of Carpenters, et al*, 430 U.S. 290, 304, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338, where the state action was permitted. Here the libel action would clearly call for adjudication of the merits of the allegations of dishonesty which were the core issue in the grievance proceeding.

In sum, we are not convinced that the facts of this case or Supreme Court decisions since *Mendicki* call for a different rule than our court applied there. We hold, therefore, that the discharge letter, insofar as it was disseminated and the grounds therein discussed in the grievance proceedings, as contemplated by the agreement, is within the protection of the unqualified privilege recognized in *Mendicki*.

4. We are not persuaded by the contrary opinions which would recognize only a qualified privilege in such circumstances. *See, e. g.,*

## IV

Despite our holding that the unqualified privilege recognized in *Mendicki* applies here, that privilege would not entitle the defendants to publish statements such as were made in the discharge letter to persons beyond those who would necessarily receive the communication pursuant to the bargaining agreement. The *Joftes* case, which recognizes the unqualified privilege, nevertheless states that "grounds for the privilege, of course, do not exist where the employer publishes the notice containing the grounds for dismissal to persons without a legitimate job-related interest in receiving it." *Joftes v. Kaufman, supra*, 324 F.Supp. at 664; *see also Honaker v. Florida Power & Light Co., supra*, 95 L.R.R.M. at 3271.

Thus, the question remains whether application of the unqualified privilege sustains the summary judgment for the defendants, or whether there may be any genuine issue as to a material fact so that the moving parties might not be entitled to judgment as a matter of law. *See* Rule 56(c) F.R.Civ.P. The plaintiff argues to us that issues for determination included the question whether there was a publication of the defamatory matter alleged. (Appellant's Brief at 3). Furthermore he argues that in view of the factual contentions between the parties, the district court erred by preventing the plaintiff from presenting evidence concerning his discharge and the damages suffered. (*Id.* at 18). Viewing his contentions as a whole, we must consider whether there was a genuine issue of material fact concerning publication beyond those to whom publication was protected by the unqualified privilege afforded by *Mendicki*.

Here plaintiff's complaint alleged that the discharge letter had been published to third parties. (I R. 4–6). In their answers the defendants denied this allegation. (*Id.* at 8–9, 27–28). Plaintiff's answer to de-

*Ezekiel v. Jones Motor Co.*, 374 Mass. 382, 372 N.E.2d 1281, 1284 (Mass.), and cases there cited.

fendant Phillips' interrogatory concerning this allegation claimed that the discharge letter "was published and delivered to persons other than those to whom it was addressed." He specifically named eleven (11) individuals, some of whom apparently are agents and employees of the defendants and plaintiff's union. He also claimed that the letter or its contents were published to employees at the state employment agency and to "many others." (*Id.* at 12). At his deposition plaintiff admitted that he himself had shown the discharge letter to some of the individuals whom he claims saw the letter or who learned of its contents, but it was not established that plaintiff's showing of the letter covered all of those to whom the letter was released. (III R. 46–50).

The district court in its pretrial order had noted that one of the remaining issues of fact was whether there had been a publication of the alleged defamatory material. (I R. 86). As part of its pretrial order, the court incorporated by reference a list submitted by the plaintiff which named the individuals to whom the alleged defamatory statements were purportedly published. (*Id.* at 82). Included in this list were the names of several individuals who had not been mentioned in either plaintiff's deposition or his answers to Phillips' interrogatories. This list also contained the claim that the discharge letter had been published by the defendants "to many unknown and unidentified employees of both defendants and other third parties." (*Id.* at 30–31). A supplemental list of names indicated that the plaintiff would furnish the names of other individuals who saw the discharge letter or learned of its contents when they became available after further discovery. (*Id.* at 120).

In briefs supporting their motions for summary judgment, the defendants relied on plaintiff's deposition testimony and argued that the plaintiff had failed to show that the defendants had published the defamatory statements to individuals other than those required to see it under the collective bargaining agreement. (I R. 99; II R. 244). The defendants did not, however, offer any proof by way of affidavit or otherwise to contradict fully the documents submitted by the plaintiff, and the depositions do not clearly establish that there was no publication to persons beyond those to whom distribution of the letter was required. The summary judgment record—the depositions, answers to interrogatories and the like—did not demonstrate the job responsibilities of the several company employees and union members who were said to have received the letter sufficiently to establish that they were within the unqualified privilege. Since the defendants were the movants for summary judgment, it was incumbent on them to demonstrate the absence of a genuine issue of fact on the question whether publication was made only to those persons covered by the unqualified privilege. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–1610, 26 L.Ed.2d 142; *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir.). Without expressing any view on the ultimate merits of this publication issue, we must hold that the summary judgment was in error, although we agree with the district court in its general views on the viability of the *Mendicki* case.

Accordingly, the summary judgment for defendants is vacated and the cause is remanded for further proceedings consistent with this opinion.