634 So.2d 756 (1994)
Katie D. TUCKER, Appellant,
v.
Donald G. RESHA, Appellee.
No. 92-3118.
District Court of Appeal of Florida, First District.
March 30, 1994.
*757 Gordon D. Cherr and Brian S. Duffy of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for appellant.
Richard E. Johnson of Spriggs & Johnson and William A. Friedlander of Friedlander & Mattox, Tallahassee, for appellee.
James K. Green of James K. Green, P.A., West Palm Beach, for amicus curiae American Civ. Liberties Union Foundation of Florida, Inc.
ALLEN, Judge.
Katie D. Tucker (Tucker) challenger a judgment in favor of Donald G. Resha (Resha) in an action founded on theories of defamation and invasion of the right to privacy guaranteed by the Florida Constitution. Concluding that the allegedly defamatory statements made by Tucker were absolutely privileged because they were made in connection with her duties as executive director of the Florida Department of Revenue (agency), and concluding that a violation of the privacy provision of the Florida Constitution does not give rise to a cause of action for money damages, we reverse the judgment for Resha on each count.
The complaint alleged that Tucker defamed Resha by making statements to her staff and to the Florida Department of Law Enforcement to the effect that Resha's family was in organized crime and that he was involved in pornography, drug smuggling, arms sales, and money-laundering. These statements were alleged to have been in retaliation for Resha's opposition to Tucker's husband in the race for president of the Florida AFL-CIO.
The testimony at trial, viewed in the light most favorable to Resha, includes that Tucker, when she was executive director of the agency, caused Resha and his two Tallahassee businesses, Movies and More and Seminole Books, to be investigated and audited. Tucker indicated to the agency's director of the division of collection and enforcement, Wood, that she had been told by a confidential source that Resha "was involved in drugs, in laundering," and in she did not "know what else."
Tucker, when interviewed by an agent of the Florida Department of Law Enforcement, Smart, said that Wood was asked to look into bookstores in Tallahassee and Gainesville for possible munitions sales and Mafia connections. Tucker said that Resha was a target of investigation because of reports of "his cash dealings in the book store." Tucker reported to Smart that Resha's suspected criminal activity included "taking cash" and not paying sales tax, "dealing in some porno tapes and in videos that were not *758 legal," and buying and selling weapons without paying sales tax on the transactions.
Tucker's husband, Miller, and Resha both ran for president of the Florida AFL/CIO; Tucker described the battle for the presidency as a "nasty battle." Tucker believed that Resha was responsible either directly, or indirectly through his business partner or bodyguard, for an anonymous letter to the governor's office that resulted in an investigation into whether Tucker and her husband improperly used union money to build an addition to their home.
The agency's multi-year audit of Resha resulted in a total tax liability for one of Resha's businesses of approximately $500. The investigation and audits turned up no criminal activity. The president of the Florida Police Benevolent Association (PBA), Maddox, testified that although he employed Resha at a salary of $49,000 annually, if Resha were not under the cloud of this litigation, he would award Resha a $90,000 contract to lobby and raise money for the PBA. The record also includes evidence of damages to Resha's businesses. The jury returned a verdict in Resha's favor on Resha's defamation and invasion of privacy claims.
The supreme court has observed: "The public interest requires that statements made by officials of all branches of government in connection with their official duties be absolutely privileged." Hauser v. Urchisin, 231 So.2d 6, 8 (Fla. 1970). The court has further expressed its rationale as follows: "[It is] in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." McNayr v. Kelly, 184 So.2d 428, 431 n. 12 (Fla. 1966) (quoting Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959)). In Florida, executive officers enjoy an absolute privilege regarding defamatory statements made in connection with the duties and responsibilities of their offices. McNayr, 184 So.2d at 433; see also City of Miami v. Wardlow, 403 So.2d 414 (Fla. 1981). And the absolute privilege applies "no matter how false or malicious words spoken or written by an executive official of government may be... ." McNayr, 184 So.2d at 429; see also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 114, at 822 (5th ed. 1984) ("[A] qualified privilege would not be adequate protection for the public officer, since it would necessitate calling him as a witness to deny malice, and so subject him to cross-examination upon his official conduct in a private suit, and would end by submitting it to the eccentric and unreliable judgment of a jury... .").
The McNayr court explained what is meant by an official acting within the scope of his power: "[T]he occasion must be such as would have justified the act, if [the official] had been using his power for any of the purposes on whose account it was vested in him." McNayr, 184 So.2d at 431 n. 12 (quoting Barr v. Matteo); see also Huszar v. Gross, 468 So.2d 512, 515 (Fla. 1st DCA 1985).
After the facts and circumstances of a communication are revealed, the issue of whether a privilege has been established is a question of law for the court to decide. Huszar, 468 So.2d at 516 (citing Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906)); see also Axelrod v. Califano, 357 So.2d 1048, 1051-52 (Fla. 1st DCA 1978) (citing Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907)). Tucker's former agency had the responsibility to perform audits to ensure proper payment of taxes, and failure to pay due taxes is a crime. §§ 20.21(3)(c)-(d), 212.18(2); 212.15(1)-(2), Fla. Stat. (1987); § 213.34, Fla. Stat. (1989); see also § 212.0505, Fla. Stat. (1987) (dealing with sale of drugs); §§ 212.02(14), 212.05(1), Fla. Stat. (1987) (dealing with sales or use tax in general); § 896.102, Fla. Stat. (1987) (dealing with reports of large currency transactions). Tucker's statements to members of her staff about Resha's alleged activity in illegal gun sales, drugs, pornography, money-laundering and organized crime involved activities which could include nonpayment of tax or violation of reporting requirements, and therefore were within the scope of Tucker's office at the Department of Revenue as a matter of law. That her motive may have been malicious is irrelevant under Florida law because our supreme court has determined that the unfettered exercise of governmental *759 powers and duties must prevail over individual rights for the public good.
Tucker's statements to investigators of the Florida Department of Law Enforcement were absolutely privileged because they too were made within the scope of her duties. Even where a public official makes defamatory statements to a newspaper, the absolute privilege applies. Hauser, 231 So.2d at 8. The interview with Florida Department of Law Enforcement officials was at that agency's request and is embraced within the privilege announced in Hauser.
The trial court thus erred in failing to apply the absolute privilege as a matter of law to Tucker's statements. The defamation award therefore must be reversed.
We turn now to the award for governmental intrusion into private life. The Florida Constitution provides: "Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein." Art. I, § 23, Fla. Const. The question whether a cause of action exists for "governmental intrusion," giving rise to money damages  that is, whether this provision is self-executing  is one of first impression. The test to determine whether a constitutional provision is self-executing is whether the provision "sufficiently delineates `a rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment.'" Schreiner v. McKenzie Tank Lines, 408 So.2d 711, 714 (Fla. 1st DCA 1982), aff'd, 432 So.2d 567 (Fla. 1983) (emphasis added) (quoting Gray v. Bryant, 125 So.2d 846 (Fla. 1960)).
A "governmental intrusion" action is ex hypothesis an action against the government rather than against a private person. The award of money damages against Tucker naturally implicates the doctrine of sovereign immunity. The Florida Constitution requires "specific, clear, and unambiguous language in a statute" to constitute a waiver of sovereign immunity. Manatee County v. Town of Longboat Key, 365 So.2d 143, 147 (Fla. 1978). The effect of holding that the privacy provision of the constitution gives rise to an action for "governmental intrusion into private life" with resulting money damages is to hold, impliedly, that immunity is waived. However, there is no specific, clear, unambiguous waiver of immunity in the constitutional provision, or in any statute. The statutory waiver of sovereign immunity provided by section 768.28, Florida Statutes (1987), applies "if a private person [] would be liable," id. at 768.28(1), but the privacy provision of the Florida Constitution obviously creates no cause of action against private persons. It is thus clear that article I, section 23 does not create a cause of action for "governmental intrusion" because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages.
Resha argues that the award of money damages is necessary to effectuate Florida's constitutional guarantee of access to courts. See art. I, § 21, Fla. Const. This argument fails to acknowledge that Florida courts are open to invasion of privacy claims under the common law, provided that all the elements of the cause of action are proved. See, e.g., Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944); Thompson v. City of Jacksonville, 130 So.2d 105 (Fla. 1st DCA 1961), cert. denied, 147 So.2d 530 (Fla. 1962).
Resha also argues that the supreme court impliedly has found that article I, section 23 of the Florida Constitution is self-executing, relying upon In re T.W., 551 So.2d 1186 (Fla. 1989). That case, however, held only that the provision is "clearly implicated" in a woman's decision not to continue her pregnancy. Id. at 1192. It contains no discussion on the issue presented in the instant case: whether the provision is self-executing so as to provide for money damages.
Based on the foregoing, we hold that the trial court erred in allowing the alleged cause of action for "governmental intrusion" into private life to go to the jury. The constitutional provision fails to sufficiently delineate a rule by which the right to money damages can be "determined, enjoyed, or protected." Schreiner, 408 So.2d at 714. The question nevertheless is appropriate for certification to the supreme court as one of great public importance.
*760 Other issues raised by Tucker regarding evidentiary rulings made by the trial judge and the award of punitive damages are rendered moot by our decision and we decline to address them. We accordingly reverse the judgment against Tucker and certify the following question:
DOES A VIOLATION OF ARTICLE I, SECTION 23 OF THE FLORIDA CONSTITUTION GIVE RISE TO AN ACTION FOR MONEY DAMAGES?
BARFIELD and WEBSTER, JJ., concur.