649 So.2d 897 (1995)
Clifford HOPE, Appellant,
v.
NATIONAL ALLIANCE OF POSTAL AND FEDERAL EMPLOYEES, JACKSONVILLE LOCAL NO. 320, a Labor Organization, Appellee.
No. 93-2720.
District Court of Appeal of Florida, First District.
January 31, 1995.
*898 Barry A. Bobek, Jacksonville, for appellant.
John F. Kattman of Kattman & Eshelman, P.A., Jacksonville, for appellee.
WOLF, Judge.
Clifford Hope appeals from a final summary judgment in favor of the defendant in his defamation action against National Alliance of Postal and Federal Employees (National Alliance). The issue is whether the trial judge erred in granting a summary judgment in favor of the National Alliance because the alleged defamatory statement was made during the course of a grievance procedure and, thus, was absolutely privileged. We affirm.
The appellant is an employee of the United States Postal Service. The appellee is a labor organization which represents the interests of predominantly black employees of the United States Postal Service.[1] The labor organization contacted Postmaster R.L. Hodges, the appellant's supervisor, about its concerns over racial tensions in that division. The labor organization, in response to Hodges' request for the specific racial incidents about which the labor organization was concerned, sent a letter on November 28, 1990. In that letter, the labor organization stated in particular that it was aware of racial tensions *899 in connection with a drive-by shooting for which a former employee, James Reese, had been arrested:
The James Reese case is evident [sic] that there is racial disharmony on the work floor. Mr. Reese was widely known for his flagrant vocal thrashing of blacks in his operation. Even though numerous written complaints had been filed, Mr. Reese was not reprimanded. His friendship with Mr. Jake Trisch and Mr. Clifford Hope allowed him to mistreat black employees. It is also knowledgeable to employees that all three men collaborated in the death of the young black male killed by James Reese. It is also widely known that Mr. Hope is an accessory to murder in that he actually destroyed the murder weapon.
The appellant, Clifford Hope, filed a defamation action against the labor group for the accusation of criminality contained in the letter.[2] The complaint alleged that the statements were false, malicious, defamatory, and libelous per se, and were published in disregard of the harmful affect on the plaintiff's reputation and standing in the community.
The labor organization answered the complaint, setting forth the affirmative defense of privilege, and moved for summary judgment. The appellant opposed the motion for summary judgment, contending that the defamatory statements were neither relative to the collective bargaining agreement nor part of any grievance procedure, and that the designated equal employment opportunity officer for the postal service at Jacksonville was not the postmaster, R.H. Hodges. Following arguments on the motion for summary judgment, the trial court granted summary judgment in favor of the labor organization based on the defense of absolute privilege.
In Bell v. Gellert, 469 So.2d 141 (Fla. 3d DCA 1985), the court found that statements are absolutely privileged if they are (1) contained within the labor grievance complaint, and (2) are relevant for defamation law purposes to the labor grievance complaint. A number of courts have held that the granting of the absolute privilege is necessary to prevent impairment of the national labor policy. See, e.g., General Motors v. Mendicki, 367 F.2d 66 (10th Cir.1966).[3] The Mendicki opinion stated its rationale and holding grounded on federal labor policy as follows:
We think Congress intended that the respective representatives of employer and employee at such conferences and bargaining sessions should feel free to express their respective contentions as to the pertinent facts and the issues involved fully and frankly and to strongly support their positions with respect to the controversy, and employing the words of Mr. Justice Fortas in his dissent in Linn [v. United Plant Guard Workers of America, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582] do so "untrammelled by fear of retribution for strong utterances." Otherwise, the chance for desirable fruitfulness from such conferences and bargaining sessions would be greatly lessened. Moreover, such actions for damages would create irritations between employer and employee, which would tend to impair the chance for a peaceful settlement of labor controversies between employer and employee in the future.
367 F.2d at 71-72.
In Hyles v. Mensing, 849 F.2d 1213 (9th Cir.1988), the ninth circuit stated,
To allow state defamation claims based on statements made in grievance proceedings would weaken the grievance system as a means of industrial self-government. Exposing witnesses to this potential tort liability would inhibit and discourage forthright and sincere testimony and participation in the system. See Hasten v. Phillips Petroleum Co., 640 F.2d 274, 279 (10th Cir.1981) ("[D]amage suits predicated on statements made in the grievance procedures would tend to interfere with frank *900 and strong statements of positions in such proceedings.")
In fact, a number of federal courts have held that not only are matters stated within a grievance procedure absolutely privileged, but also state defamation actions are preempted by section 301 of the Fair Labor Standards Act if they occur in the context of a grievance proceeding. See Durrette v. UGI Corp., 674 F. Supp. 1139 (M.D.Pa. 1987). At least one federal court has stated,
The most obvious element of the defamation claim that would require interpretation of the CBA is the determination of any privilege(s) held by the employer. Only by examining the terms of the grievance procedure within the CBA could a court determine whether the defendants were privileged to make any alleged defamatory statements. As the court faced with a situation analogous to the one at hand noted,
"[i]f the defamation claim were not preempted, the state court would be called upon to determine whether the letter to the union was privileged... . In order to resolve the privilege defense, the state court would have to determine the relative interests of the union, the employer and the employee in such a communication. By permitting a state court to make a ruling of this type would violate the policy of having the federal courts develop a uniform body of federal labor law as it applies to collective bargaining agreements... ."
Furillo v. Dana Corp. Parish Division, 1994 WL 583222 at p. 68 (E.D.Pa. Oct. 21, 1994) (citing Barbe v. Great Atlantic & Pacific Tea Company, 722 F. Supp. 1257, 1261-1262 (D.Md. 1989)).
While we are not necessarily convinced that the action in the instant case would be preempted by the Fair Labor Standards Act, we are convinced that in order to preserve the integrity of the collective bargaining and grievance procedures, statements made within these procedures should be protected by absolute rather than qualified immunity.[4]See Tucker v. Resha, 634 So.2d 756 (Fla. 1st DCA 1994) (absolute privilege necessary to allow executive offices to perform their duty).
Appellant asserts that the statements in the instant case were not entitled to an absolute privilege, because they were not made during the course of a properly instituted grievance procedure and were not reasonably related to the subject matter of the grievance. A number of federal cases have stated that all statements made during the course of the grievance procedure are absolutely privileged. See, e.g., Harrigan v. Caneel Bay, Inc., 745 F. Supp. 1122 (D.Virgin Islands 1990) (employer's alleged statements accusing employee of dishonesty held to be absolutely privileged when made during course of grievance process). See also Hyles v. Mensing, 849 F.2d 1213 (9th Cir.1988). We do not accept the position that all statements made during the course of grievance procedures are absolutely privileged. In order to be privileged, the statements must have some connection to the matters which are subject to the grievance procedure. The third district has held that statements "must be relevant for defamation purposes to the labor grievance complaint." Bell, supra at 142 (emphasis added).
The issue is, what is relevant for defamation purposes or how broadly must relevancy be interpreted so as to not have a chilling effect on the grievance proceedings. A review of the law in other areas where an absolute privilege has been granted may be helpful in this analysis. The balance which must be preserved between an individual's right to be free from slander versus the need for full disclosure in judicial and quasi-judicial proceedings is similar to the balance which must be preserved in the grievance process.
This absolute immunity resulted from the balancing of two competing interests: the right of an individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public interest to a free *901 and full disclosure of facts in the conduct of judicial proceedings. Fridovich [v. Fridovich, 598 So.2d 65 (Fla. 1992)]. In determining that the public interest of disclosure outweighs an individual's right to an unimpaired reputation, courts have noted that participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim. Id.; Sussman v. Damian, 355 So.2d 809 (Fla. 3d DCA 1977). Although the immunity afforded to defamatory statements may indeed bar recovery for bona fide injuries, the chilling effect on free testimony would seriously hamper the adversary system if absolute immunity were not provided. Wright [v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984)].
Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So.2d 606, 607 (Fla. 1994).
Statements made within the course of a judicial or quasi-judicial proceeding are protected as long as the statements are relevant to the subject of the inquiry. Fridovich v. Fridovich, 598 So.2d 65, 66 (Fla. 1992). In recognition of the necessity of providing for the free flow of information, however, courts have not imposed a strict relevancy test in determining whether a statement made in the judicial process is entitled to immunity; rather, courts provide for absolute immunity if a statement is made during the course of the proceeding and "has some relation to the proceeding." Levin, supra at 608. See also Fridovich, supra at 66, which cites with approval the Restatement (Second) of Torts § 587 (1977), which provides that the privilege applies "if the matter has some relation to the proceeding."[5] We feel that the same level of protection should be provided to statements made during the course of the grievance proceeding where the free flow of information is essential to the integrity of the grievance process. We, therefore, must analyze the statements in the instant case in accordance with the relaxed relevancy standard utilized in the restatement in order to determine if they were absolutely privileged. See Bell v. Gellert, supra.
We find that the statements at issue were related to and within the scope of the grievance process. The terms and conditions of employment which were the subject of the grievance involved charges of racial harassment of black employees by James Reese, and the condoning of this behavior by supervisory personnel, including appellant. The alleged defamatory statement claimed that there was a concerted effort by appellant and Mr. Reese against a black man in connection with a murder. If this statement was true and widely known, it would contribute to the racial tension in the workplace and be evidence of the condoning of discriminatory behavior by the supervisors. We, therefore, find that the statement was reasonably related to the grievance. The fact that the alleged defamation statement involved an accusation of criminal acts does not mean that it was not relevant to the subject of the grievance. Harrigan v. Caneel Bay, Inc., 745 F. Supp. 1122 (D.Virgin Islands 1990). In General Motors Corp. v. Mendicki, supra, the circuit court dealt with a similar complaint filed by Mendicki against his employer for a statement made at a meeting between two union representatives and two employer representatives, addressing a grievance arising from Mendicki's discharge from employment. The statement there had to do with the fact that the company knew Mendicki had been stealing from the company. There, the court found that the questions and answers were an integral part of the process of addressing the employee's grievance and had a direct relevancy to the issue addressed by the grievance.
Appellant also argues that the initial letter which was filed was not in strict compliance with steps outlined in the grievance process and, therefore, should not be considered part of the grievance process. There is no allegation, however, that the postmaster would not ultimately be involved in the grievance process or that appellee did not reasonably *902 believe that it was initiating the grievance process by addressing the letter to the ultimate supervisor of the facility.[6] (In fact, the postmaster attempted to gather information to address the complaint concerning employment conditions, and the letter which contains the alleged defamatory statements was in response to his request for further details concerning the complaint). In Mendicki, the court found that statements made even at the question and answer stage of a grievance were absolutely privileged. Id. at 71 ("We think Congress intended that the respective representatives of employer and employee at such conferences ... should feel free to express their respective contentions... .").
In Hasten v. Phillips Petroleum Co., 640 F.2d 274 (10th Cir.1981), an issue was raised which is similar to the issue in the instant case. The issue there was whether statements made in a discharge letter were absolutely privileged as part of a bargaining agreement. Hasten argued that the statements in the discharge letter were outside the grievance process and therefore should not be provided an unqualified or absolute privilege. In Hasten, however, the 10th circuit held that because the discharge letter was a step required in the "grievance machinery," the contents of the letter were subject to the unqualified privilege recognized in Mendicki. In the instant case, we find that the letter from the president of the labor organization was the starting point for discussions with the employer concerning racial tensions in the workplace. The statements made in the letter to Hodges could easily be analogous to the written discharge notice of Hasten, supporting a finding that the statements were "within the grievance procedure and [therefore] not beyond the protection of the Mendicki decision merely because it was the initial notice triggering the procedure," rather than a statement made during formal grievance proceedings.
We find that the alleged defamatory statements here were absolutely privileged. The judgment of the trial court is affirmed.
MICKLE, J., concurs.
WEBSTER, J., concurring with written opinion.
WEBSTER, Judge, concurring.
The record in this case establishes that, at best, the statements which are the subject of the defamation claim were made with reckless disregard for whether they were true. In my opinion, the record, examined in a light most favorable to appellant, would also support a finding by a trier of fact that the statements were uttered with both knowledge that they were false and malice. Personally, I find such conduct reprehensible, and believe that appellant should have an opportunity to prove to a trier of fact that the statements were false and uttered with malice; and that, assuming a trier of fact were to agree with appellant, appellant should be entitled to recover damages from appellee. However, my research satisfies me that Judge Wolf has correctly recited the pertinent law. Accordingly, because the evidence establishes beyond dispute that the letter was written incident to a dialogue concerning perceived labor grievances, and because the challenged statements are at least arguably relevant to the dialogue concerning those grievances, I find myself constrained to concur.
NOTES
[1] While we have some concern whether a labor group which is not the certified bargaining agent may bring a grievance under a contract to which they are not a party and have not negotiated, we will not pursue the issue because this argument was not made in the trial court and is only dealt with perfunctorily in appellant's brief. In addition, it appears from the record that the party pursuing the grievance on behalf of the National Alliance was an employee who could bring such a grievance. The employer treated the National Alliance as if it was a valid representative of certain employees and, thus, entitled to file a grievance on behalf of those employees.
[2] According to the deposition testimony of the president of Local 320, it was later discovered that there were no facts to support the claims against Clifford Hope.
[3] An absolute privilege meaning that no matter how false or malicious the written or spoken words may be, the publication of the words will not support a defamation action. Tucker v. Resha, 634 So.2d 756 (Fla. 1st DCA 1994).
[4] We are not unmindful that a number of jurisdictions have determined that only a qualified privilege exists (see 60 A.L.R.3d 1041), but we must agree with the third district as stated in Bell, supra, that the opinions that support granting an absolute privilege appear to be the more well reasoned.
[5] Public officials are granted an absolute privilege as long as statements are made in connection with "their duties and responsibilities of their office." McNayr v. Kelly, 184 So.2d 428, 433 (Fla. 1966); City of Miami v. Wardlow, 403 So.2d 414 (Fla. 1981).
[6] While the absolute privilege may be waived by circulation of the defamatory material to parties not involved in the grievance process (Meier v. Hamilton Standard Elec. Systems, Inc., 748 F. Supp. 296 (E.D.Pa. 1990), there is no evidentiary support for such a finding in the instant case.