Steven MIKE, Plaintiff,

v.

RON SAXON FORD, INC., Defendant.

Civil File No. 3–95–1152.

United States District Court,
D. Minnesota,
Third Division.

March 25, 1997.

Daniel E. Warner, Warner Law Office, for plaintiff.

Mark J. Peschel, Johnson & Lindberg, P.A., for defendant.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

This matter is before the Court upon defendant's motion for summary judgment against plaintiff's claims and in favor of its Counterclaim. Plaintiff opposes defendant's motions and moves the Court for an Order granting leave to amend his Complaint. For the reasons discussed below, defendant's motions are denied and plaintiff's motion to amend is granted.

### *BACKGROUND*

Mike Saxon (plaintiff) was employed by Ron Saxon Ford (defendant) as a heavy line auto mechanic from August 8, 1988 to August 14, 1995. During that time, plaintiff was a member of District Lodge No. 77 of the International Association of Machinists and Aerospace Workers, AFL–CIO (Union). He was also a member of the National Guard.

From July 22, 1995 through August 5, 1995, plaintiff took a leave of absence to serve his National Guard training. Plaintiff alleges that Larry Ladwig (Ladwig), the service manager at Ron Saxon Ford, opposed his taking military leave and got angry when he did. Upon returning to work after his leave, plaintiff alleges that he was called into a meeting with Ladwig and General Manager Jack Saxon (Saxon) and placed on suspension without pay for allegedly overstating his time cards. Defendant alleges that in July of 1995, the billing clerk at Ron Saxon Ford noticed that plaintiff's time cards had been artificially altered to increase the time plain-

tiff had actually worked. During the meeting, plaintiff could not explain the sixteen discrepancies concerning his time cards. As a result, he was suspended without pay pending further investigation.

Approximately one week later, on or about August 14, 1995, plaintiff met with Ladwig, Saxon, and Union Shop Steward, Butch Claseman (Claseman). Plaintiff alleges that, during that meeting, Ladwig accused him of "stealing" from the company by altering his time cards, which plaintiff adamantly denied. Nonetheless, because plaintiff did not offer any "reasonable excuse" for the changes on his time cards, he was fired and immediately presented with a written notice of such. The notice, which was prepared prior to the meeting, stated that plaintiff was terminated for "[a]lteration of times on daily job tickets resulting in overpay [and] [r]etention of overpayment of payroll and not reporting the difference to the Saxon Ford Payroll Department." The notice was placed in plaintiff's personnel file. Later, plaintiff found out that the notice was also distributed to the St. Paul Police Department.

On August 9, 1995 (prior to the termination meeting) defendant filed a theft charge against the plaintiff with the St. Paul Police Department. A uniformed police officer visited Ron Saxon Ford on at least two occasions in connection with the charge. Saxon also spoke with an investigator and the prosecuting authorities on the telephone. Ultimately, the charge was referred to a Ramsey County attorney who declined prosecution based on the fact "that the time slips were kept in a (sic) unsecured area that was accessible to other employees as well as suspect, Steven Mike."

Plaintiff filed a grievance with the Union challenging his termination pursuant to the Collective Bargaining Agreement (CBA). A grievance hearing was held before a "Compliance Committee" as required by the CBA. Plaintiff was represented by union business representative, Don Yetman (Yetman). Following the hearing, plaintiff, Yetman, Claseman, Saxon and Ladwig met and reviewed the documents presented by Ron Saxon Ford. According to the defendant, the parties agreed that the daily job tickets were altered

and that the alterations led to an overpayment to plaintiff. In an apparent effort to settle the matter, plaintiff agreed to repay the overpayment amounts. Ron Saxon Ford contends that in doing so, plaintiff admitted that he was erroneously overpaid. However, plaintiff alleges that he was pressured into admitting the overpayment, and after the meeting he changed his mind about repaying the money because he realized that no proof of overpayment had been established. Plaintiff subsequently instructed his union representative to pursue arbitration regarding his termination, which had not taken place at the time this motion was filed.

In November, 1995, plaintiff filed suit in Ramsey County District Court against the defendant alleging two causes of action: a state law defamation claim based on the written notice of termination and verbal statements made during the August 14, 1995 meeting (Count One) and a federal military leave claim brought under 38 U.S.C. § 4311 (Count Two). Plaintiff has since filed a Motion to Amend his Complaint to include an allegation concerning defendant's publication of the notice of termination and false accusations of theft to the St. Paul Police Department and prosecuting authorities.

In December, 1995, defendant removed the case to federal court pursuant to 28 U.S.C. § 1441 based on the federal military leave claim. Defendant now moves the Court for an Order dismissing both claims as a matter of law and awarding $ 3,593.82 on its unjust enrichment counterclaim. For the following reasons, defendant's Motion for Summary Judgment is denied on plaintiff's federal military leave claim (Count Two) and denied as to his defamation claim (Count One); defendant's Counterclaim is denied; and plaintiff's Motion to Amend his Complaint is granted.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c). The court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts which might affect the outcome of the lawsuit according to applicable substantive law are material. Once the moving party presents a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## II. Defamation Claim & LMRA Preemption

■ In Count One of his Complaint, plaintiff claims that his character and reputation were defamed by defendant's written and verbal allegations that he altered his time records and stole money from the Ron Saxon Ford. Defendant responds that any alleged defamatory statements were made during the course of a grievance proceeding conducted pursuant to the collective bargaining agreement and, therefore, are preempted by Section 301 of the Labor Management Relations Act (LMPA), 29 U.S.C. § 185(a) and absolutely privileged.

■ Section 301 vests jurisdiction in the federal courts to hear claims for violation of labor contracts. The Supreme Court has construed section 301 as preempting state-law tort claims in situations where the resolution of the claim substantially depends upon interpretation of the terms of the collective bargaining agreement. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985). The preemption test is whether the state-law claim is "inextricably intertwined with consideration of the terms of a labor contract." *Lueck*, 471 U.S. at 213, 105 S.Ct. at 1912. If resolution of the state-law claim does not require the interpretation of any term of the labor agreement or when the claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract," preemption is inapplica-

ble. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 408, 108 S.Ct. 1877, 1882–83, 100 L.Ed.2d 410 (1988). Purely factual questions about an employee's conduct or an employer's conduct and motives do not require interpretation of the collective bargaining agreement. *See Taggart v. Trans World Airlines Inc.*, 40 F.3d 269, 273 (8th Cir.1994).

Plaintiff's defamation claim in this case is neither premised upon an alleged violation of any term of the collective bargaining agreement, nor dependent upon interpretation of the CBA's terms, and therefore is not preempted by section 301. Rather, the defamation claim involves a purely factual inquiry surrounding the alleged publication false and defamatory statements about plaintiff. Plaintiff's claim is based on verbal statements that were made during the August 14, 1995 meeting with Saxon and Ladwig and written statements contained in his notice of termination. These allegedly defamatory statements were made during defendant's investigation of the time card alterations, which took place well before any grievance procedure pursuant to the CBA was ever initiated.

No authority exists for defendant's proposition that the alleged defamation substantially depends on the interpretation of the CBA. Defendant's argument that plaintiff's defamation claim is somehow governed by the "just cause" provisions of the CBA is unpersuasive. *See Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 408, 108 S.Ct. 1877, 1882–83, 100 L.Ed.2d 410 (1988)(typically state tribunal can resolve state law claim without interpreting the "just cause" language of collective bargaining agreement). Moreover, even if plaintiff's claim does implicate the "just cause" provisions or some other term of the CBA, such implication is tangential, at best, and is not so "inextricably intertwined" with the CBA that it bars plaintiff's defamation claim for purposes of section 301 preemption.

■ The Court is equally unpersuaded by defendant's argument that the meeting on August 14, 1995 was part of the grievance process under the CBA and that alleged defamatory statements made during such grievance proceedings are absolutely privi-

leged under *Hull v. Central Transport, Inc.* 628 F.Supp. 784 (N.D.Ind.1986) and *Hasten v. Phillips Petroleum Co.,* 640 F.2d 274 (10th Cir.1981). In *Hull v. Central Transport, Inc.* the Court preempted a defamation action under section 301 premised upon statements made during the grievance process. *Id.* at 789. However, the *Hull* court construed the rule narrowly and expressly stated that such a rule applies to defamatory statements made during the grievance hearing. *Id.* The court further stated that defamatory statements made *outside* the grievance hearing are not subject to preemption. *Id.* at 789–90. Defendant's attempt to expand the scope of *Hull* is futile in light of the Court's explicitly narrow holding: "Thus, the court finds that in the narrow instance of defamation suits brought for statements made in the grievance process, the detrimental effect of a defamation suit on the grievance process mandates preemption of such a suit." *Id.* at 789.

Defendant's reliance on *Hasten* is equally misplaced. At issue in that case was an allegedly defamatory "discharge letter" which the employer was expressly required to provide to the employee and the union under the terms of the collective bargaining agreement. On those specific facts, the court interpreted the letter (i.e., alleged defamatory statement) as "part of the entire proceeding contemplated by the provisions of the agreement for the grievance machinery," and thus preempted the defamation claim as falling within the ambit of the CBA. *Hasten,* 640 F.2d at 276. No such facts exist in this case.

While *Hull* and *Hasten* clearly stand for the general proposition that statements made during grievance proceedings are preempted and absolutely privileged from defamation suits, that general proposition is inapplicable here because the statements in this case were made *before* any grievance existed. As a result, they could not have been made *during* the grievance process. That critical fact distinguishes this case from *Hull* and *Hasten.*

In sum, defendant has failed to demonstrate that plaintiff's defamation claim substantially depends on the collective bargaining agreement for resolution. Defendant has

also offered no authority to support his assertion that actions outside of the grievance proceedings are preempted by section 301. Preemption under section 301 is thus inapplicable as is the absolute privilege defense.

### III. Conditional Privilege

 Alternatively, defendant argues that the defamation claim should be dismissed as a matter of law because the statements to which plaintiff objects were true or it had a qualified privilege to make them. "True statements, however, disparaging, are not actionable." *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). In this case, the question of whether plaintiff actually altered time cards and in effect "stole" money from the defendant and, consequently, whether defendant's statements to that effect were truthful, is a hotly disputed issue. Summary judgment on the "truth defense" is thus inappropriate.

 Defendant also argues that it is entitled to a conditional privilege for the statements. In order for a "communication, to be privileged, [it] must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Lewis v. Equitable Life Assurance Society of U.S.,* 389 N.W.2d 876, 889 (Minn. 986). "While the initial determination of whether a communication is privileged is a question of law for the court to decide, the question of whether the privilege is abused is a jury question." *Lewis,* 389 N.W.2d at 890. Generally, investigative steps by an employer which demonstrate a genuine effort to ascertain the accuracy of statements about an employee are usually sufficient evidence of probable cause and support an application of the conditional privilege. *See Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 380 (Minn. 1990). However,

"[w]here evidence of reasonable or probable grounds for believing in the validity of the potentially defamatory statements is such that it permits of more than one conclusion regarding the existence of reasonable or probable cause, the question becomes one of fact for the jury. The court then factors that factual finding into its legal determination of whether an em-

ployer enjoys a qualified privilege for his statements."

*Id.* at n. 4. The record supports the defendant's contention that it had a proper purpose (to reveal and prevent salary overpayments) and that it arranged a proper occasion (the August, 1995 "investigative" meetings) upon which to communicate its conclusions concerning the alleged theft to the plaintiff. *Id.* at 380. However, material factual disputes remain as to whether the defendant had probable or reasonable grounds to believe the validity of the potentially defamatory statements.

### IV. Federal Military Leave Claim

 In Count Two of his Complaint, plaintiff asserts a cause of action under 38 U.S.C. § 4311 which addresses employment rights of persons who serve in the uniformed services. It provides, in essence, that an employer will be considered to have denied a person initial employment or retention if the person's membership in the uniformed services is a motivating factor in the employer's action, unless the employer can show that action would have been taken in the absence of such membership. *See* 38 U.S.C. § 4311(b).

In arguing for summary judgment, defendant contends that the plaintiff was terminated for "just cause" for altering his time cards and receiving and retaining overpayments in excess of $ 3,500. Defendant contends that plaintiff's military status had nothing to do with it. Plaintiff points to the following evidence as raising fact disputes over defendant's motive in discharging him: defendant advertised for his position both while he was on leave and upon his return, prior to the investigation; defendant showed substantial hostility towards his military leave and denied his leave request on one occasion; and upon his return from leave he was immediately suspended for allegedly altering his time records. Moreover, plaintiff claims that the question of whether he was discharged for "just cause" has yet to be determined. Likening this claim to an employment discrimination claim, which usually and inherently involves material fact disputes that should not be resolved on summary judgment, plaintiff argues that a determination of

whether his military leave was motivating factor in his discharge is a fact issue for the jury. The Court agrees. Defendant's motion for summary judgment on this issue is denied.

### V. Defendant's Counterclaim and Plaintiff's Motion to Amend

 Defendant has filed a counterclaim based on unjust enrichment to recover the $ 3,593.82 that it allegedly overpaid to the plaintiff. Whether and, if so, to what extent, the plaintiff was overpaid is disputed and must be resolved by a jury. Defendant's motion for summary judgment on his counterclaim is denied.

 Plaintiff has filed a Motion to Amend his Complaint to add an allegation concerning the alleged publication of plaintiff's notice of termination and allegations of theft to the St. Paul Police Department and Ramsey County prosecuting authorities. Plaintiff claims that the facts underlying the additional allegations were discovered on June 6, 1996 during the deposition of Jack Saxon and were unknown to him prior to that time. There being no good reason to deny plaintiff's request, the Motion to Amend is granted.

Accordingly, IT IS HEREBY ORDERED that:

1) Defendant's Motion for Summary Judgment against plaintiff's claims is DENIED in its entirety;

2) Defendant's Motion for Summary Judgment on his its Counterclaim is DENIED;

3) Defendant's Motion for Attorney Fees and Costs is DENIED; and

4) Plaintiff's Motion to Amend his Complaint is GRANTED.